# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CATHERINE KASIDONIS,
    Plaintiff,

vs.

NATIONSTAR MORTGAGE LLC,
    Defendant.

Case No. 1:14-cv-815
Litkovitz, M.J.

**ORDER**

This action involves a dispute between pro se plaintiff Catherine Kasidonis and defendant Nationstar Mortgage LLC (Nationstar), the servicer of a mortgage loan ("Mortgage") which encumbers a residence owned by plaintiff ("Property"). This matter is before the Court on (1) plaintiff's motion to reopen the case (Doc. 106), defendant's opposing memorandum (Doc. 109), and plaintiff's reply in support of her motion (Doc. 114); and (2) defendant's motion to enforce settlement agreement (Doc. 109), plaintiff's response in opposition to the motion (Doc. 115), and defendant's reply in support of the motion (Doc. 116).

## I. Procedural history

Plaintiff filed this pro se action in October 2014. (Doc. 1). She was granted leave to proceed *in forma pauperis* and the complaint was filed on October 22, 2014. (Docs. 2, 3). The Clerk entered default as to defendant Nationstar on December 18, 2014. (Doc. 7). After the Clerk had entered defendant's default (Doc. 7) and plaintiff had filed a motion for default judgment against Nationstar (Doc. 8), counsel Jessica Salisbury-Copper and John Bernard Kopf, III, entered their appearance for Nationstar in July 2015. (Docs. 19, 20). Nationstar filed a motion to set aside the entry of default and to file an answer *instanter*. (Doc. 21). The Court granted Nationstar's motion and denied plaintiff's motion for default judgment on September 16, 2015. (Docs. 27, 29).

Plaintiff filed an amended complaint on March 16, 2016. (Doc. 47). Thereafter, on July 21, 2016, the parties filed a joint motion to continue the case schedule and refer the case to mediation. (Doc. 56). The matter was referred to Magistrate Judge Stephanie K. Bowman for settlement purposes only on July 21, 2016. (Doc. 57). The Court granted the parties' joint motion to extend the case calendar. (Doc. 58). Plaintiff agreed to the limited appointment of an attorney for mediation assistance (Doc. 60), and an order appointing pro bono counsel (Henry D. Acciani) for the purpose of representing plaintiff in the mediation proceedings was issued on August 12, 2016. (Doc. 61). The settlement conference was originally set for September 9, 2016 (Doc. 59) but was rescheduled to September 30, 2016 to allow time for Nationstar to produce additional documentation to plaintiff. (09/07/2016 docket entries). Plaintiff thereafter filed a motion for extension of time to complete discovery and a motion to continue the mediation date on September 21, 2016, "due to health reasons and incomplete discovery." (Docs. 62, 63). The undersigned conducted a telephone status conference with the parties and counsel, including pro bono counsel Mr. Acciani, on September 26, 2016 and issued an order extending the discovery and dispositive motion deadlines, vacating the scheduled mediation, and continuing the mediation deadline. (Doc. 65).

On November 29, 2016, plaintiff filed a motion to compel Nationstar to provide more complete responses to plaintiff's interrogatories and a motion for extension of time for Nationstar to submit its more complete responses. (Docs. 66, 67). The Court denied plaintiff's motions two days later. (Doc. 68). Defendant Nationstar moved for leave to file an amended answer on December 16, 2016, to assert a statute of limitations defense in response to a "RESPA"[1] claim that plaintiff appeared to be bringing based on her deposition testimony and

---

[1] Real Estate Settlement and Procedures Act

discovery responses. (Doc. 69). Nationstar also filed a motion for judgment on the pleadings or for summary judgment (Doc. 70) on December 22, 2016. Plaintiff filed a motion for extension of time to plan for mediation and to file a response to defendant's motion on January 10, 2017. (Doc. 74). The next day, the Court granted defendant's motion for leave to file an amended answer (Doc. 75) and plaintiff's motion for an extension of time to respond to defendant's motion for judgment on the pleadings (Doc. 76). Nationstar filed an amended answer on January 12, 2017 (Doc. 77) and plaintiff filed her response to the motion for judgment on the pleadings or for summary judgment on February 13, 2017 (Doc. 78). Thereafter, the Court granted defendant's unopposed motion to extend the trial schedule and rescheduled the bench trial to July 17, 2017. (Doc. 80). Following a telephone status conference with the Court on March 31, 2017 in which plaintiff and her pro bono counsel Mr. Acciani participated, an order was issued vacating the mediation referral to Magistrate Judge Bowman. (Doc. 87).

On May 17, 2017, plaintiff filed a document captioned "Plaintiff's Request for Scheduling on Insurance Claim and Information on Loan Modification." (Doc. 89; Doc. 89-1, Exhs. 36-38). Plaintiff requested "Information on Time Frame for Plaintiff's Insurance Claim and Loan Modification Explanation." (Doc. 89 at 1). Plaintiff alleged in her request that "Nationstar miscalculated and/or has not clearly explained and has yet to provide the Plaintiff with a detailed explanation of the additional amount added to the loan modification in 2011 and may be unable to do so according to Exhibit 37." (*Id*. at 2). Exhibit 37 is a Consent Order issued by the United States Consumer Financial Protection Bureau (CFPB) that bears no apparent connection to this case. (Doc. 89-1, Exh. 37). Plaintiff also stated that a "hazard insurance claim put on hold due to health reasons in 2011 which the Plaintiff believes should include the 25% (recoverable depreciation) needs to be scheduled for repair." (Doc. 89 at 1). Plaintiff attached a

letter from an insurance company dated October 25, 2011, addressed to Nationstar ("Insured") and plaintiff ("Additional Name"). (Doc. 89-1, Exh. 36). The letter involved a loss caused by a roof leak that occurred at the Property on April 21, 2011. The letter stated the review of the claim had been completed, a check in the amount of $11,009.54 had been issued to plaintiff and Nationstar, the check was being mailed to Nationstar under separate cover, and a copy of the adjuster's estimate was included for their review. The letter stated that the insurer would pay no more than the actual cash value until the actual repair or replacement was completed. A detailed 8-page estimate was attached to the letter. (*Id.*).

In response to plaintiff's May 17, 2017 "Request for Scheduling," defendant noted that plaintiff asserted two claims against Nationstar in her first amended complaint: (1) Nationstar miscalculated the principal amount of her mortgage loan modification in 2011, and (2) an insurer should have paid more on a hazard claim she made in 2011. (Doc. 92). Nationstar noted it had filed a motion for summary judgment in December 2016 on these claims (Doc. 70), and the motion remained pending. Nationstar argued that plaintiff's request that the 2011 insurance claim be scheduled for repair sought specific performance on a claim that plaintiff had not pled, the request was not timely, and plaintiff had not provided any law or admissible evidence to support her request. Nationstar argued that plaintiff's request for an explanation of the amount added to the principal under the loan modification request should be denied because plaintiff did not meet and confer with Nationstar before filing her motion, and Nationstar had explained the amount added to the principal loan balance in its interrogatory answers. (*Id.* at 3, citing Doc. 70, Exh. 6 at 2).

The Court held another status conference with the parties and counsel, including pro bono counsel Mr. Acciani, on May 18, 2017. (Doc. 90). After the conference, the Court issued an

order re-referring this matter to mediation before Magistrate Judge Bowman. (Doc. 91). The final pretrial conference and trial dates were continued in light of the mediation. (Doc. 93).

A settlement conference was held on July 18, 2017 before Magistrate Judge Bowman. Plaintiff appeared at the conference with Mr. Acciani. After the conference, Magistrate Judge Bowman noted in the record that the matter was resolved; the parties had agreed to a 75-day conditional dismiss, with the Court to retain jurisdiction to enforce the settlement; and the settlement was conditioned on an inspection to be completed within 14 days. (07/18/2017 docket entry). The undersigned issued an Order dated July 19, 2017, dismissing the action with prejudice but allowing any of the parties, "upon good cause shown within 75 days," to move to reopen the case if settlement was not consummated. (Doc. 96). The Order also provided that the parties could "timely move to substitute a judgment entry contemplated by the settlement agreement." (*Id.*). Finally, the Order provided that the "Court expressly and explicitly retains jurisdiction to enforce the settlement agreement of the parties." (*Id.*).

Nationstar sent a draft settlement agreement to Mr. Acciani via email on September 14, 2017. (Doc. 109, Exh. C). Mr. Acciani sent an email to plaintiff on September 19, 2017, requesting her review and approval of the draft settlement agreement and notifying her that the settlement agreement would need to be filed with the Court soon. (Doc. 97, Exh. 10). He followed up with an email to plaintiff on September 20, 2017. (*Id.*, Exh. 12). Plaintiff responded to Mr. Acciani over one month later on October 25, 2017, regarding her concerns and proposed changes to the settlement agreement. (Doc. 109, Exh. D). Mr. Acciani forwarded the email to Nationstar's counsel the next day and asked that Nationstar advise him where it could and could not accommodate plaintiff. (*Id.*). On November 9, 2017, Nationstar responded to plaintiff's proposed changes to the settlement agreement and release as follows:

1. **The Trust**: Plaintiff requested that the Poulos Business Trust ("Trust") be "removed from all parts" of the settlement agreement because the Trust "was not a part of the original document" and the "property is in my name alone."
   **Nationstar responded**: "This was a term of the original deal struck at mediation. It needs to remain part of the deal."

2. **Date correction**: Nationstar agreed to correct the date the original promissory note was executed, which was February 28, 2003, not 2004.

3. **W-9 tax form**: Plaintiff questioned why the form was necessary since Nationstar had her social security number.
   **Nationstar responded**: It needed the form, which was short.

4. **Payment**: Plaintiff noted that the phrase "[f]or consideration received" appeared several times in the agreement and she questioned whether by accepting the specified payment of $4,500 she gave up rights or was "additionally bound to this agreement in a negative way."
   **Nationstar responded**: It could not advise plaintiff on this.

5. **Waiver of redemption and reinstatement**: Plaintiff questioned why she would waive all rights.
   **Nationstar responded**: It could not advise her.

6. **Insurance proceeds**: Plaintiff stated: "I expressly do not agree that Nationstar may retain the Insurance Proceeds. The property needs to be restored."
   **Nationstar responded**: This term was part of the original deal agreed to at mediation and it needed to remain part of the deal.

7. **Deficiency balance**: Plaintiff asserted that Nationstar waived the deficiency but then "takes away the waiver in section E."
   **Nationstar responded**: It could not advise plaintiff.

8. **Release**: Plaintiff wrote it was "Too Broad."
   **Nationstar responded**: The "deal is a complete walk away" and plaintiff "cannot reserve any claims to pursue later."

9. **Confidentiality and Notices**: Plaintiff characterized this provision as "Too Broad" and wrote that the CFPB, a federal agency, was not listed as an entity to which information could be disclosed.
   **Nationstar responded**: The terms of the agreement are confidential and there is no reason to disclose them to the CFPB.

10. **Adequate Consideration**: Plaintiff wrote, "What is fair, adequate and substantial? They giveth in one paragraph and take away in another."
    **Nationstar responded**: It could not advise plaintiff.

11. **Covenant not to sue**: Plaintiff wrote: "I am about to sue the insurance company and Nationstar over the insurance coverage. Although I believe that they are a part of the original suit. I will not release the insurance company. Perhaps Nationstar charged me and did not pay the insurance company."
**Nationstar responded**: Plaintiff must give a full release.

12. **Tax consequences**: Plaintiff wrote: "The tax consequences are directly affected by the difference between the balance owed to Nationstar and the balance collected in the foreclosure sale. The amount collected in the foreclosure sale is directly affected by the condition of the property. The condition of the property is directly affected by the proceeds of the insurance claim. I need to know the breakdown of the amount which was added to the loan modification. The interest which was added in with the amount should have been reported to me. If there are tax consequences the interest deduction will be necessary information. The interest added into my principal was not reported to me. I need the current balance of the mortgage with principal and interest listed separately."
**Nationstar responded**: It does not advise on taxes but it could tell plaintiff what the current unpaid principal and interest amounts were.

(Doc. 109, Exh. D).

On January 24, 2018, Mr. Acciani sent an email to Nationstar's counsel explaining that he was no longer involved in the matter as the Order dismissing the case was issued on July 19, 2017; the 75-day window to reopen the case expired on October 2, 2017; he had tried as long as November to help plaintiff finalize the agreement but "she was obviously unhappy with some of the terms and questions why they are in the agreement"; he thought an agreement had been worked out at the mediation, but apparently not; and Nationstar's counsel had explained why the terms were included to Mr. Acciani, and he had relayed their explanations to plaintiff. (*Id.*, Exh. E). He expressed his understanding that the case had been dismissed and the parties were in the same position they were in before the lawsuit was filed. (*Id.*).

Seven months after the case had been dismissed, on February 20, 2018, plaintiff filed a motion to reopen the case with a supporting memorandum and 17 exhibits. (Doc. 97). Plaintiff reviewed the chronology of communications between the parties since the mediation. Plaintiff stated that Mr. Acciani had sent her an email from Nationstar with its draft settlement agreement

on September 19, 2017. (Doc. 97 at 3, citing Exh. 10). Plaintiff asserted that the "Confidential Settlement Agreement and Release draft contains names which are not on the mortgage or on the deed and the proposals which the Pro Se Plaintiff requested have not been included in the agreement." (*Id.*, citing Exh. 11). Plaintiff asserted she sent her response to Mr. Acciani regarding the draft agreement on October 25, 2017 (*Id.* at 4, Exh. 13) and defendant responded to Mr. Acciani on November 13, 2017. (*Id.*, Exh. 14). Plaintiff alleged that defendant conducted an inspection of the property outside the original time frame of the settlement. (*Id.* at 5; *see* 07/18/2017 docket entry). Plaintiff acknowledged that she consented to two extensions of the time for defendant to conduct an inspection and the inspection was performed within the extended time period, but she suggested defendant nonetheless did not timely fulfill this condition of the settlement because the Court purportedly granted only the first of the two extensions. (Doc. 97 at 5; *see* Exhs. 5, 6, 7, 8).[2]

In her original motion to reopen, plaintiff presented the following grounds for reopening the case: (1) defendant failed to timely comply with a condition of the settlement agreement requiring it to complete an inspection of the Property within 14 days; (2) defendant had failed to comply with the settlement agreement by "us[ing] an excessive amount of days [58]" to draft the settlement agreement, which left pro bono counsel only five days to review it and plaintiff only 12 days to review it, whereas plaintiff felt she was entitled to at least an equal amount of time and input; and (3) defendant wanted to force plaintiff to accept terms of the settlement that plaintiff did not believe she had agreed to and she had issues that needed to be heard by the

---

[2] Plaintiff's exhibits show that plaintiff, through pro bono counsel, consented to two 14-day extensions of the inspection deadline. (Doc. 97, Exhs. 5, 6, 7, 8). Defendant informed Mr. Acciani that it would apprise the Court that plaintiff had agreed to the first 14-day extension, and Mr. Acciani informed plaintiff that he would approve the draft email to the Court that Nationstar's counsel had composed for that purpose. (*Id.*, Exh. 6).

Court. (Doc. 97 at 6-7). Plaintiff explained her disagreement with the terms of the draft settlement agreement as follows:

> The [] Plaintiff has requested a detailed explanation of charges added to her mortgage. The Defendant has refused to explain the charges to [] Plaintiff. The [] Plaintiff must deal with the tax consequences of the foreclosure deficit. If the home sells for less than the amount determined to be owed by the Defendant then the Defendant can say that the [] Plaintiff was gifted with the difference between the foreclosure sale price and the amount owed.

> The value of the house is directly affected by the appearance of the house. The house must be repaired. The insurance company was paid by the Defendant through force planed [sic] insurance with the mortgage loan. The same insurance company has insured the house since the start of the mortgage loan on February 28, 2003. The insurance company has chosen to write a check to the Defendant for the damages on the house. The Defendant and the insurance company have not told the [] Plaintiff the date on which the check was written or the amount for which the check was written. The cost of the insurance has been added to the [] Plaintiff's mortgage every year since 2003. The current claim is the only claim that has been made on this house since 2003. This is a legitimate claim which was estimated by the insurance company's adjuster. The [] Plaintiff has had this as a part of her case from the beginning.

(*Id.* at 6).

On March 1, 2018, the undersigned issued an Order to the parties and their counsel, including Mr. Acciani, to contact Magistrate Judge Bowman's chambers to arrange for a follow-up conference. (Doc. 99). Nationstar filed a motion for an extension of time to respond to plaintiff's motion to reopen the case until after termination of the mediation (Doc. 102), which the Court granted (Doc. 103). Nationstar's counsel Ms. Salisbury Copper, plaintiff, and Mr. Acciani participated in a telephone conference with Magistrate Judge Bowman on March 26, 2018. (03/26/2018 docket notation). Magistrate Bowman noted on the docket that the settlement terms from the July 2017 agreement[3] were discussed, and the parties were "to move forward with executing agreement with one change as discussed today." (03/26/2018 docket notation). She

---

[3] The docket notation refers to the "7/17/2017 agreement." The correct date is "7/18/2017."

reported that plaintiff's motion to reopen could be denied as moot, except that the parties were given a short period of time to execute the agreement. (*Id.*). The undersigned issued an Order on March 28, 2018, which denied plaintiff's motion to reopen the case (Doc. 97) as moot and which reads in pertinent part as follows:

> This case was recommitted to Magistrate Judge Bowman for further mediation on March 1, 2018. (Doc. 99). The Court has been advised by Magistrate Judge Bowman that the outstanding issues have now been resolved and the parties are in the process of executing a settlement agreement. . . .

(Doc. 105). The action was dismissed with prejudice, provided that any party could move to reopen the action "upon good cause shown within 30 days" if settlement was not consummated, and the parties could timely move to substitute a judgment entry contemplated by the settlement agreement if desired. (*Id.*). As with the prior Order, the Court "expressly and explicitly retain[ed] jurisdiction to enforce the settlement agreement of the parties." (Doc. 105 at 1).

According to Ms. Salisbury-Copper, at the March 2018 conference, the parties discussed the terms of the settlement agreement the parties had reached at the earlier July 2017 mediation and plaintiff agreed to move forward with executing the written settlement agreement Nationstar had drafted to memorialize the July 2017 settlement agreement with one change: a revision would be made to address plaintiff's concern that "Nationstar might seek to collect on a deficiency from the [] Trust if the trust was a party to the written settlement agreement, or that Nationstar might otherwise attempt to argue that the [] Trust is liable for the balance due on the Note." (Doc. 110, Exh. J, Salisbury-Copper Declaration). After the March conference, Nationstar once again prepared a draft settlement agreement and release which was revised to "expressly include the trust in deficiency waiver provision." (*Id.*, ¶ 4; Exh. J-1). Nationstar

emailed the written settlement agreement with the Trust deficiency waiver provision to Mr. Acciani on March 27, 2018. (*Id*., Exh. J, ¶ 4).

Plaintiff filed her second motion to reopen the case on April 27, 2018. (Doc. 106). That motion is ripe and is before the Court for its review, together with defendant's motion to enforce the settlement agreement (Doc. 109).

## II. Plaintiff's motion to reopen/Defendant's motion to enforce settlement agreement

### A. The parties' arguments

In her motion to reopen, plaintiff repeats the allegations made in support of her prior motion to reopen, which appear to relate to three matters. (Doc. 106). First, plaintiff alleges the draft settlement agreement and release included names which were not listed on the mortgage or deed. (*Id*. at 2). Plaintiff generally alleges that a "party who is not named on a mortgage and has not signed on a mortgage is not a part of that mortgage." (*Id*. at 3). Second, plaintiff alleges that defendant has not given her a detailed explanation of charges that have been added to her mortgage as part of a loan modification and the alleged tripling of her monthly payment, which is information that plaintiff claims defendant is obligated to provide under the "Dodd-Frank Act" and which she needs to correctly make tax decisions.[4] (*Id*. at 2-3). Third, plaintiff argues that Nationstar and the insurer of the property, who plaintiff paid through force placed insurance under the mortgage loan, have not informed plaintiff of the amount and date of a check the insurer wrote for repairs of the house. (*Id*. at 3). She alleges that the value of the house is directly affected by its condition, the house must be repaired, and the insurance proceeds are for repair of the house. (*Id*. at 3-4). Plaintiff concludes by asserting that the "mediation has failed

---

[4] Plaintiff contends that the "Dodd-Frank Act" provides that information about a consumer's loan must be made available to the consumer in easily understood language; imposes interest standards that must be followed; and allows a creditor to set off or recoup damages for violations of these minimum standards. (*Id*. at 3).

due to the Defendant's request that a party who was not a party to the mortgage be named as a party to the settlement agreement and be a signer on that agreement," and plaintiff has legitimate issues which have been presented to the Court. (*Id.*).

Defendant opposes plaintiff's motion to reopen the case and moves the Court to enforce the parties' settlement agreement under Fed. R. Civ. P. 70.[5] (Doc. 109). Nationstar contends that the settlement agreement reached at the mediation on July 18, 2017 is enforceable by the Court, and the written agreement Nationstar proposed accurately reflects the terms of the parties' agreement. Nationstar argues that the Court should deny plaintiff's motion to move forward with claims that the Court has dismissed with prejudice and which plaintiff agreed to release as part of the parties' settlement agreement.

In support of its position, Nationstar has submitted the May 15, 2018 affidavit of Joan Osiemo, a Litigation Research Analyst for "Mr. Cooper," formerly known as Nationstar. (Doc. 109, Exh. A). Ms. Osiemo states in her affidavit that her job responsibilities include "accessing, reviewing and understanding" Nationstar's business records pertaining to its customers and their mortgage loan accounts. (*Id.*). Ms. Osiemo states that she attended the July 18, 2017 mediation as Nationstar's representative with defendant's outside counsel, Ms. Salisbury-Copper. (*Id.*, ¶ 2). Ms. Osiemo asserts that at the mediation, the parties discussed and settled the dispute between plaintiff and Nationstar; plaintiff agreed to the material terms of the settlement; and plaintiff agreed that Nationstar would draft the agreement that contained the material terms. (*Id.*, ¶ 3). Ms. Osiemo asserts that one of the material terms the parties agreed to at the mediation was inclusion of the Poulos Business Trust in the settlement and release. (*Id.*). Ms. Osiemo

---

[5] Rule 70(a) provides: "If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done--at the disobedient party's expense--by another person appointed by the court. When done, the act has the same effect as if done by the party." *Id.*

represents that although plaintiff made an offer prior to mediation which rejected inclusion of the Trust in the settlement and release, Nationstar required that the Trust be included due to its potential interest in the property and the claims asserted by plaintiff. (*Id.*). Ms. Osiemo further states that the parties' settlement was subject to Nationstar's inspection of the property, which was to be completed within 14 days. (*Id.*). Ms. Osiemo asserts that at the conclusion of the mediation, both Nationstar and plaintiff stated that they agreed to the settlement terms, and Magistrate Judge Bowman stated that she believed the parties had settled their dispute. (*Id.*, ¶ 4).

Nationstar summarizes the main terms of the settlement agreement as follows:

1. Plaintiff and the Trust would give possession of the property, in good condition, to Nationstar within 30 days of executing the settlement agreement, with all personal belongings to be removed and the property to be left in broom-clean condition free of any and all trash and interior and exterior debris.

2. Plaintiff and the Trust would agree to the filing of a foreclosure action and entry of a consent judgment and decree of foreclosure, with plaintiff and the Trust waiving service of process, signing off on the consent judgment and decree of foreclosure, and waiving all rights of appeal.

3. Nationstar would pay $4,500 to plaintiff with payment to be made within 30 days of the later of: (a) Nationstar's receipt of the executed settlement agreement with release from plaintiff and the Trust; (b) Nationstar's receipt of a completed W-9 from plaintiff; (c) delivery of possession of the property to Nationstar in accordance with the agreed terms; and (d) Nationstar's receipt of a time-stamped agreed judgment of dismissal with prejudice of this action.

4. Nationstar would waive any deficiency balance following confirmation of the foreclosure sale and expiration of any rights of appeal.

5. Nationstar would request that the major bureaus to which Nationstar reports delete the "trade line" from plaintiff's credit history.

6. Plaintiff and the Trust would execute a full and broad release of all known or unknown claims in favor of Nationstar and all current and former owners and servicers.

7. The terms and release would be put into a formal written settlement agreement which would contain other typical settlement agreement terms, with plaintiff and the Trust's execution of the agreement to be notarized.

(Doc. 109, Exh. A-1).

Ms. Osiemo states that after two 14-day extensions, she and Nationstar completed an inspection of the property on August 23, 2017 and agreed to accept the condition of the property and move forward with the settlement on August 29, 2017. (*Id.*, ¶ 5). Ms. Osiemo asserts that she reviewed the draft settlement agreement that Nationstar's counsel, Ms. Salisbury-Copper, emailed to plaintiff's pro bono counsel, Mr. Acciani, on September 14, 2017. (*Id.*, ¶ 6; Exh. A-1). She states that the settlement agreement, which is attached to her affidavit, "accurately represents the material terms" the parties agreed to at the mediation. (*Id.*).

Nationstar asserts that plaintiff did not object to the terms of the draft settlement agreement, seek an extension of the 75-day time period to reopen the case, or request that the Court reopen the case within the 75-day period provided in the Conditional Order of Dismissal, which expired on October 2, 2017. (Doc. 109 at 5). Rather, plaintiff first raised concerns about the draft settlement agreement in her October 25, 2017 email to Mr. Acciani, which was well beyond expiration of the 75-day period on October 2, 2017. (*Id.*).

Nationstar contends that plaintiff's issue with signing a written agreement relates to the inclusion of the Trust in the agreement, as plaintiff claims the Trust was not a party to the mortgage or the original deed conveying the property to plaintiff. (Doc. 109 at 7-8, citing Doc. 97 at 3 and Doc. 106 at 2, wherein plaintiff states that the draft settlement agreement and release contains names that were "not on the mortgage or on the deed."). Nationstar indicates that inclusion of the Trust is proper because the Trust was the owner of the Property between 2013

and 2017, a time period that is relevant to plaintiff's claims. (Doc. 109 at 12-13).[6] Nationstar notes that plaintiff deeded the property to the Trust through a warranty deed that was recorded at the Hamilton County Recorder's Office on December 30, 2003 (Doc. No. 03-0598708), and the Trust then conveyed the property back to plaintiff through a warranty deed that was recorded just days before the mediation on July 14, 2017 (Doc. 17-00636900). (Doc. 109 at 8, citing Exhs. I, K).

Plaintiff opposes Nationstar's motion to enforce the settlement agreement for the same reasons alleged in her motion to reopen. (Doc. 115). First, plaintiff objects to inclusion of the Trust in the settlement agreement due to a transfer of the property from the Trust to plaintiff days before the July 18, 2017 mediation. (*Id.* at 2). Plaintiff acknowledges that the Property was conveyed to the Trust at one point, but she notes that the Trust deeded the Property back to her four days before the mediation and is no longer the owner of the Property. Plaintiff states:

> [T]he Confidential Settlement Agreement and Release incorrectly states that at the time of the mediation the property was in the name of the Trust (page 1 of 14, Recitals).[7] The Trust deeded the property back to the Plaintiff 4 days prior to the mediation. This is evidenced by the Defendants Exhibit K which is a copy of the deed in question that is notarized, time stamped and dated into the Hamilton County Recorder's Office filed: 7/14/17. . . ." The deed reads just as it read at the time of the mortgage.

(Doc. 115 at 2). Plaintiff argues that Nationstar is attempting to alter the mortgage document by requiring inclusion of the Trust in the settlement agreement. (*Id.*). This appears to be plaintiff's main objection to the terms of the settlement agreement. (*See Id.* at 5).

---

[6] In December 2003, Tina Poulos Kasidonis transferred the property by general warranty deed to Catherine T. Poulos, trustee, and Peter Poulos, trustee (the Poulos Business Trust). (Doc. 72 at 26; Doc. 109, Exh. I). On July 14, 2017, four days before the July 2017 settlement conference with Magistrate Judge Bowman, the Poulos Business Trust transferred the property back to "Tina Kasidonis." (Doc. 109, Exh. K). Plaintiff "Catherine 'Tina' Kasidonis" testified at her deposition that her "common nickname is Tina" and her "maiden name is Poulos." (Doc. 72 at 6, 8). At the time of plaintiff's November 2016 deposition, the property deed was still in the name of the Trust. (*Id.* at 19).

[7] The settlement agreement states "WHEREAS, the Trust and Ms. Kasidonis represent that the Trust is the current title holder to the Property. . . ." (Doc. 97, Exh. 11).

Second, plaintiff repeats allegations about a check that the insurance company issued for repair of damage to the Property in connection with the April 21, 2011 property loss claim. (*Id.*). Plaintiff indicates that she is the owner of the insurance policy and she paid the premiums as part of her mortgage payments, but she has not been informed of the date the check for repairs was issued by the insurance company and the amount of the check. (*Id.* at 3). Plaintiff does not provide a cogent explanation for how these allegations bear on the existence of a settlement agreement or shed light on whether the parties agreed on the material terms of a settlement agreement.

Third, plaintiff alleges she requested information from Nationstar related to additional principal that was added to the original principal amount in connection with a June 29, 2011 loan modification. (*Id.* at 3-5). Plaintiff references the requirements of the "Dodd-Frank Act" in connection with this allegation. However, she does not explain how her request for such information and any alleged statutory or regulatory violations by Nationstar shed light on whether the parties reached an agreement on the material terms of a settlement at the July 18, 2017 mediation and, if so, whether the terms of the agreement are clear and enforceable.

In its reply, Nationstar notes that plaintiff does not dispute in her response to its motion to enforce the settlement agreement that the parties reached a settlement agreement; instead, she opposes enforcement of the settlement on the ground the Trust should not be a party to the settlement agreement. (Doc. 116). Nationstar argues that inclusion of the Trust is not a valid basis for the Court to decline to enforce the settlement agreement because plaintiff agreed to include the Trust as a party to the settlement agreement, this is a material term of the settlement agreement, and this term of the settlement agreement is fully enforceable.

## B. Governing law

Defendant's motion seeks to enforce the terms of the parties' settlement agreement. "Enforcement of [a] settlement agreement . . ., whether through [an] award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 378 (1994). A district court retains jurisdiction to enforce a settlement agreement if the dismissal entry incorporates the terms of the settlement agreement, or if the order of dismissal includes a separate provision governing the parties' obligation to comply with the terms of the settlement agreement, such as a provision retaining jurisdiction over the settlement agreement. *Id.* at 381-82; *see also Hill v. Ohio State Univ.*, 870 F. Supp.2d 526, 530 (S.D. Ohio 2012) (citing *Moore v. United States Postal Serv.*, 369 F. App'x 712, 716-17 (6th Cir. 2010) (district court retains jurisdiction over a settlement agreement when the judgment entry dismissing the underlying case provides: "The Court retains jurisdiction over the settlement contract for the purposes of its enforcement.")).

Here, the Court has jurisdiction over defendant's motion to enforce the parties' agreement. The Court's Order dismissing the parties' lawsuit specifically provides: "The Court expressly and explicitly retains jurisdiction to enforce" the parties' settlement agreement. (Docs. 96, 105). Accordingly, there is no question that the district court retains jurisdiction over the settlement agreement and has authority to resolve defendant's motion to enforce the agreement.

A settlement agreement is a type of contract, and state substantive law governing contracts generally controls a settlement agreement. *Cogent Solutions Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 309 (6th Cir. 2013) (citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (quoting *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir.

1986)). Here, Ohio contract law applies pursuant to the terms of the parties' choice of law provision in the settlement agreement. (Doc. 110, Exh. J-1).

While "'[i]t is preferable that a settlement be memorialized in writing,' an oral settlement agreement is enforceable under Ohio law if 'there is sufficient particularity to form a binding contract.'" *Tocci v. Antioch U.*, 967 F. Supp.2d 1176, 1200 (S.D. Ohio 2013), *aff'd*, No. 13-4123 (6th Cir. June 10, 2014) (citing *Kostelnik v. Helper,* 770 N.E.2d 58, 61 (Ohio 2002) (citations omitted)). *Cf. Re/Max Int'l, Inc. v. Realty One, Inc.,* 271 F.3d 633, 645-46 (6th Cir. 2001) (the existence of a valid settlement agreement "is not diminished by the fact that the parties have yet to memorialize the agreement") (citing *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) ("observing that the power of a trial court to enforce a settlement agreement has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to writing")); *Bowater N. Am. Corp. v. Murray Mach., Inc.,* 773 F.2d 71, 76-77 (6th Cir. 1985) (the district court's power to enforce settlements extends to cases where the parties' agreements are not in writing); *Kukla v. Nat'l Distillers Prods., Co.,* 483 F.2d 619, 621 (6th Cir. 1973) (same).

A valid settlement agreement results in a contract between parties. *Tocci*, 967 F. Supp.2d at 1195. There must be a meeting of the minds as to the essential terms of a settlement agreement to form a valid contract. *Id.* (citing *Episcopal Ret. Homes, Inc. v. Ohio Dep't of Indus. Relations,* 575 N.E.2d 134 (Ohio 1991)). *See also Henley v. Cuyahoga County Bd. of Mental Retardation and Developmental Disabilities*, 141 F. App'x 437, 442-43 (6th Cir. 2005) ("To enforce a settlement, a district court must conclude that agreement has been reached on all material terms."). "The intent of the parties when entering a settlement agreement is an issue of fact to be decided by the district court." *Henley,* 141 F. App'x at 443 (citations omitted). The

Court must look only to "objective manifestations of intent" to determine whether the parties have manifested mutual assent. *Tocci*, 967 F. Supp.2d at 1195 (citing *Rudd v. Online Resources, Inc.*, No. 17500, 1999 WL 397351 at *5 (Ohio App. 2d Dist. June 18, 1999) (citing *Nilavar v. Osborn*, 711 N.E.2d 726 (Ohio App. 2d Dist. 1998)). A party manifests assent "wholly or partly by written or spoken words or by other acts or by the failure to act." *Id.* (quoting *Ford v. Tandy Transp., Inc.*, 620 N.E.2d 996, 1006 (Ohio App. 4th Dist. 1993) (citing Restatement (Second) of Contracts § 19(1) (1981)). "Because 'manifested mutual assent rather than actual mental assent is the essential element in the formation of contracts,' one party's 'mistaken idea' as to whether acceptance of an offer has occurred cannot overcome the recognition of mutual assent based on conduct." *Id.* (quoting *Ford*, 620 N.E.2d at 1007 n.2).

To be enforceable, the essential terms of a settlement agreement must be "reasonably certain and clear." *Id.* at 1195 (quoting *Rulli v. Fan Co.*, 683 N.E.2d 337, 339 (Ohio 1997)). Where there is no substantial dispute that the parties entered into an agreement and as to its terms, summary enforcement of a settlement agreement is appropriate. *Re/Max Intern., Inc.*, 271 F.3d at 646 (citing *Kukla*, 483 F.2d at 621; *cf. Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000) (acknowledging that if a dispute exists as to an essential term, summary proceedings may result in inequities)). No evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is presented. *Id.* (citing *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976)).

If the parties have reached an agreement on all material terms, then "only the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement." *Henley*, 141 F. App'x at 443 (quoting *Brown v. County of Genesee*, 872 F.2d 169, 174 (6th Cir. 1989)). Once a settlement is reached, the party challenging the settlement bears the burden to show that

the settlement agreement was invalid based on "fraud or mutual mistake." *Id.* (quoting *Brown*, 872 F.2d at 174) (citing *Callen v. Pennsylvania R. Co.,* 332 U.S. 625, 630 (1948)).

## C. The settlement agreement is enforceable

To determine whether the proposed settlement agreement is enforceable, the Court must determine whether (1) the parties reached agreement on all material terms of a settlement agreement, and (2) whether the essential terms of the settlement agreement are "reasonably certain and clear." If so, the remaining issue to be resolved is whether plaintiff has carried her burden to show the settlement agreement is invalid based on fraud or mutual mistake. If not, the settlement agreement is enforceable and plaintiff has not shown "good cause" to reopen the case.

There is objective evidence that the parties reached a settlement agreement by which they intended to be bound at the July 18, 2017 mediation conducted by Magistrate Judge Bowman, and that the parties had a meeting of the minds as to the essential terms of the agreement. Immediately after conducting the July 18, 2017 mediation, Magistrate Judge Bowman documented her observation and understanding that the parties had reached a settlement agreement at the mediation and had agreed to the essential terms of the settlement. Magistrate Judge Bowman noted in the record that the matter was resolved; the parties had agreed to a 75-day conditional dismissal, with the Court to retain jurisdiction to enforce the settlement; and the settlement was conditioned only on an inspection to be completed within 14 days. (07/18/2017 docket entry). Based on Magistrate Judge Bowman's report that the case had been "successfully mediated and settled" in her presence, the undersigned issued an Order dated July 19, 2017, dismissing the action with prejudice but allowing any of the parties, "upon good cause shown within 75 days," to move to reopen the case if settlement was not consummated. (Doc. 96).

The steps taken by Nationstar's counsel and pro bono counsel, Mr. Acciani, after the July 18, 2017 mediation provide further objective evidence of the parties' assent to the settlement agreement reached at the mediation and to the terms of the agreement. Nationstar sought and obtained plaintiff's consent, through plaintiff's counsel Mr. Acciani, to two extensions of the 14-day deadline for inspecting the property, the only express condition noted in the record for effectuating the settlement agreement. (Doc. 97, Exh. 5, 6, 7, 8). After it inspected the property, Nationstar drafted a proposed settlement agreement which it emailed to Mr. Acciani on September 14, 2017, and asked him to review and then advise Nationstar if he had any questions, comments, changes or concerns. (Doc. 97, Exhs. 10, 11). Mr. Acciani emailed the draft settlement agreement to plaintiff on September 19, 2017; requested that she review the draft agreement and advise him of any objections; notified her that the settlement agreement would need to be filed with the Court soon; and followed up with her on September 20, 2017, to ask if she had reviewed the draft and reminding her that the Court expected the parties to file something. (Id., Exhs. 10, 12). Mr. Acciani did not raise any concerns about the terms of the agreement in his correspondence with plaintiff or with Nationstar. Plaintiff did not respond to Mr. Acciani and did not raise any objections to the terms of the proposed settlement agreement within the next two weeks before the 75-day window for setting aside the settlement "for good cause" closed on October 2, 2017. Nor did plaintiff contact Nationstar or submit anything in writing to the Court within the 75-day window indicating she had objections to the terms of the agreement or seeking an extension of the 75-day deadline.

Thus, by the end of the 75-day period provided in the Conditional Order of Dismissal to move to reopen the case, the record showed that the parties had reached a settlement agreement on July 18, 2017, as documented by the mediator, Magistrate Judge Bowman, and by Court

Order. (07/18/2017 docket notation; Doc. 96). The settlement agreement had been memorialized in a proposed written settlement agreement prepared by Nationstar and circulated to pro bono counsel and to plaintiff. Plaintiff had not moved to reopen the case and had not sought an extension of time to do so. Although plaintiff had not yet signed the proposed settlement agreement, the matter appeared to be settled.

Plaintiff subsequently raised concerns and expressed qualms about numerous aspects of the settlement agreement after expiration of the 75-day period set forth in the Conditional Order of Dismissal. However, plaintiff never disputed that the parties had reached a settlement agreement at the July 18, 2017 mediation, and she has not presented any evidence to show that the draft settlement agreement prepared by Nationstar after the July 18, 2017 mediation failed to accurately reflect the material terms of the parties' agreement. The subsequent chronology of events does not cast doubt on whether the parties reached a settlement agreement at the July 2017 mediation on the essential terms of the agreement.

Plaintiff raised objections to the parties' settlement agreement on October 25, 2017, when she responded to Mr. Acciani's requests for her to review and approve the draft settlement agreement which he had emailed to her on September 19, 2017. (*See* Doc. 97, Exhs. 10, 11). According to the record, this was the first time that plaintiff had raised concerns and had proposed changes to the draft settlement agreement. Plaintiff refused to approve certain material terms of the proposed agreement drafted by Nationstar and sought to change those terms. Specifically, she insisted that: (1) the Trust had to be removed from the settlement agreement because she claimed it was "not a part of the original document" (presumably the mortgage document) and the Property was in her name alone; (2) Nationstar was not entitled to retain the insurance proceeds because "[t]he property needs to be restored"; and (3) she would not release

the insurance company because she intended "to sue the insurance company and Nationstar over the insurance coverage, even though she believed they were "part of the original lawsuit." (*Id.*). In addition to these matters, plaintiff questioned the reasons for including certain terms in the draft agreement, characterized the confidentiality and release provisions as "too broad," and questioned the consequences of accepting the $4,500 payment as provided in the agreement. (*Id.*). Plaintiff expressed confusion over the meaning of some terms in the agreement, such as "[f]or consideration received," and she questioned why she would waive all of her rights as part of the settlement agreement. (*Id.*). She also expressed concern about the deficiency waiver provision and stated that she required the current balance of the mortgage with principal and interest to be listed separately. (*Id.*). Nonetheless, despite her questions, concerns, and insistence on changes to the agreement, plaintiff did not claim that the draft settlement agreement misrepresented the terms of the agreement the parties had actually reached at the July 18, 2017 conference. Nor did plaintiff submit any documentation to the Court to show that the draft settlement agreement did not accurately reflect the parties' agreement.

Further, at no time did plaintiff's pro bono counsel indicate to either plaintiff or to Nationstar that the draft settlement agreement failed to accurately reflect the parties' agreement. Rather, Mr. Acciani simply forwarded plaintiff's October 25, 2017 email to Nationstar's counsel the next day and asked Nationstar to let him know "what [Nationstar] can and [] cannot accommodate." (Doc. 109, Exh. E). He did not raise any issues concerning the material terms of the draft settlement agreement in his email correspondence with Nationstar or plaintiff. Nationstar responded on November 9, 2017, that it could not advise plaintiff on several of the concerns she raised, and it stated that the substantive terms plaintiff objected to were terms "of the original deal struck at the mediation" and those terms had to remain part of the settlement.

(*Id.*). Specifically, the Trust had to be included in the settlement agreement, Nationstar would retain the insurance proceeds, plaintiff had to provide a full release of all claims and could not reserve any to pursue later, and the terms of the deal had to remain confidential. (*Id.*). Considered together, Nationstar's representations, pro bono counsel's failure to object to any terms of the proposed agreement as inconsistent with the parties' settlement agreement, and the absence of any evidence that the draft settlement agreement did not accurately reflect the material terms of the parties' settlement agreement, require the conclusion that the parties agreed to the material terms of the draft settlement agreement at the July 18, 2017 mediation conference.

Any conceivable doubt as to whether the parties reached agreement on the essential terms of a settlement agreement following the July 18, 2017 mediation with Magistrate Judge Bowman is dispelled by the subsequent Court proceedings. After Nationstar responded to plaintiff's concerns and requests for changes related to the draft settlement agreement, plaintiff took no further action in the case until February 20, 2018, when she filed her first motion to reopen with the Court. (Doc. 97). Plaintiff alleged in the motion that the "mediation was broken by [Nationstar]" in two respects: (1) "it failed to follow the court's condition of settlement time frame for the inspection"; and (2) it "used an excessive amount of days for the settlement agreement draft." (*Id.* at 7). Plaintiff protested once again that the draft contained names which were not on the mortgage or on the deed, an apparent reference to the Trust; however, she did not claim that the parties had ever agreed to exclude the Trust from the agreement. Plaintiff also generally alleged in her motion that Nationstar "wants to force [her] to accept terms of the settlement which [plaintiff] does not believe were the terms to which she agreed." (*Id.* at 6). Plaintiff did not identify those terms in her motion. Plaintiff also vaguely alleged in her motion that the draft did not include "the proposals" which she had requested. (*Id.* at 3, citing Exh. 11).

Plaintiff, though, did not identify any such "proposals" which the parties actually agreed to as part of their settlement but which were omitted from the draft agreement. She simply realleged her prior assertions related to the loan modification amounts and the 2011 loss claim information.

Nonetheless, despite the fact that plaintiff had filed her motion to reopen several months past the October 2, 2017 deadline, the Court referred the case to Magistrate Judge Bowman for a follow-up settlement status conference, which was held on March 26, 2018. (Docs. 99, 104, 03/26/2018 docket notation). Plaintiff and pro bono counsel participated in the conference. (*Id.*). After the conference, Magistrate Bowman noted on the docket that the settlement terms from the July 2017 agreement were discussed, and the parties were "to move forward with executing agreement with *one change* as discussed today." (03/26/2018 docket notation) (emphasis added). The parties were given a short period of time to execute the agreement. (*Id.*). The undersigned denied plaintiff's first motion to reopen (Doc. 97) as moot based on the reported settlement agreement, except that the parties were given a short period of time to execute the settlement agreement. (Doc. 105). The Order reads in pertinent part:

> This case was recommitted to Magistrate Judge Bowman for further mediation on March 1, 2018. (Doc. 99). The Court has been advised by Magistrate Judge Bowman that the outstanding issues have now been resolved and the parties are in the process of executing a settlement agreement. . . .

(Doc. 105).

Following the telephone conference, Nationstar once more prepared a draft settlement agreement and release which was revised to address plaintiff's concern that Nationstar might seek to collect on a deficiency from the Trust as the Trust was a party to the written settlement agreement. (Doc. 110, Exh. J, Salisbury-Copper Declaration, ¶ 4; Exh. J-1). Nationstar emailed

the written settlement agreement with the Trust deficiency waiver provision to Mr. Acciani on March 27, 2018. (*Id.*, Exh. J, ¶ 4).

There is no evidence that plaintiff responded to the modified draft agreement by offering any proposed changes or otherwise. Instead, plaintiff filed a second motion to reopen the case on April 27, 2018, which challenges the modified written settlement agreement prepared by Nationstar on the same grounds she raised in response to the first written agreement Nationstar drafted after the July 2017 mediation.[8] (Doc. 106). For the same reasons discussed above, the grounds plaintiff has asserted are not "good cause" for reopening this case.

First, plaintiff claims that the draft settlement agreement contains names that are not on the mortgage or deed. She asserts that the "mediation has failed due to the Defendant's request that a party who was not a party to the mortgage be named as a party to the settlement agreement and be a signer on that agreement." (*Id.* at 4). This is not good cause to reopen the case, and her allegations are not evidence that the parties did not reach an agreement on this aspect of the settlement agreement. To the contrary, the Trust was included in the draft settlement agreement prepared after the July 2017 mediation. (Doc. 110, Exh. J-1). Nationstar informed plaintiff after the first mediation that the Trust must remain part of the settlement agreement, as the parties had agreed. (Doc. 109, Exh. D). Plaintiff did not timely move to reopen the case before October 2, 2017 based on the Trust's inclusion in the agreement. Further, based on the prior proceedings, plaintiff was well aware at the time of the March 26, 2018 telephone conference that the Trust was part of the settlement agreement. If plaintiff had an objection to inclusion of the Trust in the settlement agreement at that point, it was incumbent on her to raise her objection at the March

---

[8] Nationstar argues that plaintiff filed her April 27, 2018 motion to reopen one day beyond the 30-day period provided in the Conditional Order of Dismissal, which was docketed on March 28, 2018 but was signed by the Court on March 27, 2018. (Doc. 109 at 12, n.2). Plaintiff reasonably construed the start date of the 30-day period as the date the Order was docketed, and she filed the motion within 30 days of that date.

2018 conference. The record shows she did not. Magistrate Judge Bowman reported after the March 2018 telephone conference that the parties had agreed to move forward with executing the settlement agreement with one change. (03/26/2018 docket notation). The sole change made at the follow-up conference was Nationstar's agreement not to seek a deficiency balance from the Trust. (Doc. 110, Exh. J, Salisbury-Copper Decl.; Exh. J-1). Plaintiff's failure to object to inclusion of the Trust in the settlement agreement at the March 2018 conference is evidence that the parties agreed on this material term of the settlement.

Second, plaintiff alleges that defendant has not provided her with a detailed explanation of charges that have been added to her mortgage and an alleged tripling of the monthly payment, which is information that plaintiff claims defendant is required to disclose under the "Dodd-Frank Act" and which she needs in order to correctly make tax decisions. (*Id*. at 2-3). But plaintiff does not allege that the parties agreed to include defendant's obligation to disclose information required under the Dodd-Frank Act as a term of the settlement agreement. She does not otherwise explain how defendant's alleged obligation to disclose this information impacts the parties' settlement agreement. Plaintiff has not shown the settlement agreement is unenforceable on this basis.

Third, plaintiff argues that Nationstar and the insurer of the property, whose premiums plaintiff paid through force placed insurance under the mortgage loan, have not informed plaintiff of the amount and date of a check the insurer wrote for repair of the Property. (Doc. 106 at 3). Plaintiff's argument is difficult to follow, but the Court notes that plaintiff raised these same concerns after Nationstar drafted the proposed settlement agreement following the July 18, 2017 mediation. (Doc. 109, Exh. D). Nationstar responded that a release of the insurance company was part of the parties' settlement agreement and the release had to remain in the

agreement. (*Id.*). Plaintiff did not timely move to reopen the case after the July 18, 2017 mediation on this or any other ground. Plaintiff knew at the time of the March 2018 conference that a release of the insurance company was part of the proposed settlement agreement, and it was incumbent on plaintiff to voice her objection to the release at the March 2018 follow-up conference if she had not agreed to this term. It is clear from the Court's documentation of the conference that plaintiff did not dispute any provisions of the draft agreement related to the insurance company at the follow-up conference. Plaintiff has not shown that the settlement agreement is unenforceable on this basis.

Based on the above documentation and record of proceedings, the Court finds that the parties reached agreement on all material terms of the settlement agreement at the July 18, 2017 mediation, with the exception of the Trust deficiency waiver provision which the parties agreed to and which was added during March 26, 2018 telephone conference. Plaintiff has not submitted any evidence to show that parties did not reach an agreement on the material terms of the settlement agreement at the conference. Further, despite plaintiff's subsequent misgivings and objections, the terms of the draft settlement agreement prepared by Nationstar (Doc. 110, Exh. J-1) are "reasonably certain and clear." Plaintiff has not carried her burden to show the settlement contract was invalid based on fraud or mutual mistake.

Plaintiff has not shown good cause for reopening this case. The resolution of this case has been delayed far too long at this point. The parties are bound by the settlement agreement they reached, and defendant is entitled to enforcement of the settlement agreement. The Court therefore orders the enforcement of the settlement agreement, as memorialized in the draft settlement agreement found at Doc. 110, Exh. J-1.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's motion to reopen the case (Doc. 106) is **DENIED**.

2. Defendant's motion to enforce the settlement agreement (Doc. 109) is **GRANTED**.

Date: _3/12/19_

Karen L. Litkovitz
United States Magistrate Judge